UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,                             Case No:

      Plaintiff,                                                           Hon.

v

HENRY FORD HEALTH SYSTEM,
HENRY FORD MACOMB HOSPITAL
CORPORATION and HENRY FORD
WYANDOTTE HOSPITAL CORPORATION,

      Defendants.
_____/

Simon Zagata (P83162)
Chris E. Davis (P52159)
Michigan Protection and Advocacy Service, Inc.
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, Michigan  48911
(517) 487-1755
_____/

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS), brings this action for declaratory and injunctive relief pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI Act), 42 U.S.C. §§ 10807-10827; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD Act), 42 U.S.C. §§ 15041-15045; and the

Protection and Advocacy of Individual Rights Program of the Rehabilitation Act of 1973 (PAIR Act), as amended, 29 U.S.C. § 794e.

2. Plaintiff, MPAS, challenges Defendants' failure to disclose documents relating to allegations of abuse and neglect regarding the alleged victims.

3. This information was requested by Plaintiff and disclosure is required by the PAIMI, DD, and PAIR Acts.

4. MPAS is charged with the responsibility, both under federal and state law, to investigate allegations of abuse and neglect against persons with disabilities.

5. Defendants' failure to provide the documents and information at issue has interfered with Plaintiff's investigative responsibilities and resulted in Plaintiff being denied its rights, pursuant to the PAIMI, DD, and PAIR Acts to investigate the suspected incidents of abuse and neglect.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because the Defendant resides in the district and the events giving rise to this claim occurred in the district.

8. Plaintiff's federal claims are made pursuant to 42 U.S.C. §§ 10801-10827; 42 U.S.C. §§ 15041-15045; and 29 U.S.C. § 794e.

9. Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201, 2202.

## PARTIES

10. Plaintiff, MPAS, is a Michigan non-profit corporation.

11. The Governor of Michigan has designated MPAS as the state's protection and advocacy system, pursuant to M.C.L. § 330.1931(1), with the responsibility to enforce and carry out the federal mandates under the PAIMI, DD and PAIR Acts.

12. As the state's protection and advocacy system, MPAS is authorized to investigate allegations of abuse and neglect of persons with disabilities. M.C.L. § 330.1931(2).

13. Defendant, Henry Ford Health System, operates hospitals throughout the State of Michigan, including the hospitals at issue. The hospitals at issue are Henry Ford Macomb Hospital and Henry Ford Wyandotte Hospital.

14. Defendant, Henry Ford Health System, is a Michigan non-profit Corporation, which operates as a health care and medical services provider in the City of Detroit, Wayne County, Michigan.

15. Defendant, Henry Ford Macomb Hospital, is a Michigan non-profit corporation, which operates and conducts business as a hospital in the City of Clinton Township, Macomb County, Michigan.

16. Defendant, Henry Ford Wyandotte Hospital, is a Michigan non-profit corporation, which operates and conducts business as a hospital in the City of Wyandotte, Wayne County, Michigan.

## FACTS

17. A project was opened after MPAS requested psychiatric death notifications from the Michigan Department of Licensing and Regulatory Affairs (LARA). Those death notifications detail the deaths of psychiatric patients in Michigan either in the psychiatric units of hospitals or shortly after discharge from psychiatric units.

18. One of the death reports to LARA that MPAS received in response to the above request came from Henry Ford Macomb Hospital, located at 15855 19 Mile Road, Clinton Twp., MI 48038. (Exhibit A).

19. MPAS also received two death reports from Henry Ford Wyandotte Hospital, located at 2333 Biddle Avenue, Wyandotte, MI 48192. (Exhibits B and C).

20. Both Henry Ford Macomb Hospital and Henry Ford Wyandotte Hospital are members of and operated by Defendant, Henry Ford Health System.

*Death Report from Henry Ford Macomb Hospital*

21. The death report from Henry Ford Macomb states that the patient died on June 8, 2019. The report states that the patient died after staff found him unresponsive. (Exhibit A).

22. The report lists the cause of death as "Asphyxiation." (Exhibit A).

23. In addition to the report, MPAS received the patient's behavioral health discharge summary. (Exhibit D).

24. Henry Ford Macomb admitted the patient for schizoaffective disorder, bipolar type and the patient received inpatient treatment at Henry Ford Macomb, meeting the definition of a "person with a mental illness" under PAIMI. (Exhibit D).

25. The death report states that the patient had suicidal ideations, was refusing medications, wasn't sleeping, and was hearing voices telling him to hurt himself. (Exhibit A).

26. Defendant, Henry Ford Macomb notified the Macomb County Sheriff of the death. (Exhibit A).

27. After reading the report, MPAS contacted the Macomb County Sheriff requesting a copy of the death investigation. The Macomb County Sheriff provided that investigation. (Exhibit E).

28. The investigation revealed that the patient died in the bathroom with a blanket wrapped around his neck. (Exhibit E).

29. Hospital staff indicated to police that they completed wellness checks on the patient every 15 minutes. (Exhibit E).

30. As part of the investigation, police reviewed video footage from Defendant, Henry Ford Macomb. (Exhibit E).

31. The Macomb County Sheriff review of the footage showed that no one checked on the patient from 8:52 p.m. until 9:31 p.m., a span of 39 minutes. (Exhibit E).

32. Based on the information received, MPAS determined it had probable cause to open an investigation into the allegations of possible neglect and/or abuse.

*March 6, 2019 Death Report from Henry Ford Wyandotte Hospital*

33. The first death report from Henry Ford Wyandotte states that the patient died in her family home on February 19, 2019. (Exhibit B).

34. The report lists the cause of death as "Unknown." (Exhibit B).

35. Henry Ford Wyandotte admitted the patient with bipolar disorder and the patient received inpatient treatment at Henry Ford Wyandotte, meeting the definition of a "person with a mental illness" under PAIMI. (Exhibit B).

36. At the time of admission, the patient had suicidal ideations for one week, with a plan to carry out that ideation. (Exhibit B).

37. In addition to the report, MPAS received the patient's behavioral health admission note. (Exhibit F).

38. At admission, the patient reported "thoughts of suicide via ingestion of medications…." (Exhibit F, p. 1).

39. The patient's treating physician noted that the patient's depression had been ongoing for months, and that she continued to be depressed despite medication. (Exhibit F).

40. According to the patient's discharge summaries, Henry Ford Wyandotte discharged the patient on February 18, 2019. (Exhibit G).

41. The patient's son found her unresponsive in her home the next day. (Exhibit B).

42. Henry Ford Wyandotte referred the matter to the hospital's office of recipient rights and the medical examiner. (Exhibit B).

43. Based on the information received, MPAS determined it had probable cause to open an investigation into the allegations of possible neglect and/or abuse.

*April 1, 2019 Death Report from Henry Ford Wyandotte Hospital*

44. The second death report from Henry Ford Wyandotte states that the patient died on March 9, 2019. (Exhibit C).

45. The report lists the cause of death as "Unknown." (Exhibit C).

46. Henry Ford Wyandotte admitted the patient with major depression recurrent with psychotic features and the patient received inpatient treatment at Henry Ford Wyandotte, meeting the definition of a "person with a mental illness" under PAIMI. (Exhibit H).

47. At the time of admission, the patient was depressed and requesting electroconvulsive therapy (ECT). (Exhibit H).

48. In addition to the report, MPAS received the patient's internal medicine history and physical. (Exhibit I).

49. Henry Ford Wyandotte staff found the patient lying face down after he fell on the mental health unit. (Exhibit I, p. 1).

50. The patient had a history of traumatic brain injury and according to his family, had a history of falling at home. (Exhibit I, pp. 1, 6).

51. The patient suffered cardiopulmonary arrest on the way to a CT scan after the fall. (Exhibit I, p. 1).

52. The patient's tongue was making movements consistent with a seizure. (Exhibit I, p. 1).

53. Dr. Steven J. Serra listed cardiorespiratory arrest with unknown etiology, possible seizure, possible medication effect as an "active problem." (Exhibit I, p. 6).

54. Henry Ford Wyandotte transferred the patient to the ICU, where he later died. (Exhibit C, p. 1).

55. Henry Ford Wyandotte referred the matter to the hospital's office of recipient rights. (Exhibit C, p. 1).

56. Based on the information received, MPAS determined it had probable cause to open an investigation into the allegations of possible neglect and/or abuse.

*MPAS' requests & Defendant Henry Ford Health System's Denials*

57. Beginning on or about October 29, 2019, MPAS sent numerous records requests to the Defendant via first class mail and e-mail.

58. Plaintiff, MPAS, sent requests regarding each of the three psychiatric deaths detailed above.

59. Plaintiff MPAS requested the following:

    a. Patient's unredacted death notice;

    b. Root cause analysis and all peer review documents;

    c. Any and all reports to accrediting body and corresponding investigations;

    d. Any and all toxicology, autopsy, and ME Reports;

    e. Any and all Office of Recipient Rights (ORR) investigations, including summary reports and reports of investigative findings (RIFs);

9

    f.    Any and all discharge summary reports;

    g.    Any and all admission assessments; and

    h.    Any and all information reflecting payor, such as Medicaid.

60. MPAS staff has followed up its correspondence with several emails to Henry Ford Health System's Legal Department.

61. Defendant fulfilled the request as to the records listed in paragraph 57, subsections a, c, e, f and g, but withheld the records listed in subsections b and d.

62. Defendant, Henry Ford Health System's counsel made clear that while Defendants would provide medical records, they would withhold peer review records, root cause analysis, and Office of Recipient Rights (ORR) records.

63. Defendant claimed that the requested peer review records are confidential and not subject to disclosure under federal and/or state law.

64. MPAS has patiently waited over seven weeks for the records to be produced but has not received them and now brings this action to enforce its rights under the federal Protection and Advocacy Acts.

## COUNT I - VIOLATION OF THE PAIMI ACT'S

## ACCESS TO RECORDS PROVISION

65. Plaintiff realleges and incorporates paragraphs 1 through 64 as though fully set forth herein.

66. MPAS, as Michigan's designated protection and advocacy system, has the right to access all records relating to individuals to which the PAIMI Act applies when conducting abuse and neglect investigations. 42 U.S.C. §§ 10805(a)(4), 10806(b)(3)(A,B).

67. 42 U.S.C. § 10806(b)(3) includes in its definition of "records" "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility…"

68. Peer review records, root cause analysis, and ORR records relating to qualifying individuals are "records" as defined by 42 U.S.C. § 10806(b)(3).

69. Defendants' failure to provide Plaintiff with the requested records relating to the allegations of abuse and/or neglect of the alleged victims violated MPAS' rights under the PAIMI Act, 40 U.S.C. §§ 10801-10827.

70. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with mental illness.

71. MPAS has no adequate remedy at law and, therefore, seeks injunctive and declaratory relief.

## COUNT II - VIOLATION OF THE DD ACT'S
## ACCESS TO RECORDS PROVISION

72. Plaintiff realleges and incorporates paragraphs 1 through 71 as though fully set forth herein.

73. MPAS, as Michigan's designated protection and advocacy system, has the right to access all records relating to individuals to which the DD Act applies when conducting abuse and neglect investigations. 42 U.S.C. § 15043.

74. 42 U.S.C. § 15043(a)(J)(i) grants protection and advocacy systems like MPAS the right to access "… other records that are relevant to conducting an investigation….", which would include peer review records.

75. Defendants' failure to provide Plaintiff with the requested records relating to the allegations of abuse and/or neglect of the alleged victims violates MPAS' rights under the DD Act, 42 U.S.C. § 15043.

76. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with developmental disabilities.

77. MPAS has no adequate remedy at law and, therefore, seeks injunctive and declaratory relief.

## COUNT III - VIOLATION OF THE PAIR ACT'S ACCESS TO RECORDS PROVISION

78. Plaintiff realleges and incorporates paragraphs 1 through 77 as though fully set forth herein.

79. MPAS, as Michigan's designated protection and advocacy system, has the right to access all records relating to individuals to which the PAIR Act applies when conducting abuse and neglect investigations. 29 U.S.C. § 794e, and 42 U.S.C. § 15043.

80. Defendants' failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of the alleged victims, violates MPAS' rights under the PAIR Act, 29 U.S.C. § 794e.

81. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to monitor facilities and to prevent abuse and/or neglect of individuals with mental illness.

82. MPAS has no adequate remedy at law and, therefore, seeks injunctive and declaratory relief.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

    A.    Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that Defendants' actions and failures to act violate the PAIMI, DD, and/or PAIR Acts by:

        i)    Denying Plaintiff access to records and information to which it is entitled to under federal law; and

        ii)    Preventing MPAS from fully performing its statutory duty to investigate incidents of suspected abuse and/or neglect of persons with disabilities, in violation of PAIMI, DD, and/or PAIR Acts.

    B.    Enter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Defendant to provide MPAS all reports, documents, and records relating to the alleged victims and that Defendant comply with the provisions of the PAIMI, DD and PAIR Acts now and in the future;

    C.    Retain jurisdiction over this action to ensure Defendant's compliance with the mandates of the PAIMI, DD and PAIR Acts;

D.     Award Plaintiff costs; and

E.     Order such other, further, or different relief as the Court deems equitable and just.

Respectfully submitted,

Dated: January 7, 2020                     s/ *Simon Zagata*
                                               Simon Zagata (P83162)
                                               Chris E. Davis (P52159)
                                               Michigan Protection and Advocacy Service, Inc.
                                               Attorney for Plaintiff
                                               4095 Legacy Parkway, Suite 500
                                               Lansing, MI  48911
                                               (517) 487-1755
                                               szagata@mpas.org